HADDONFIELD SAFE DEPOSIT AND TRUST COMPANY,
complainant,

*v.*

CLARENCE U. LIGGIT, defendant.

[Decided July 26th, 1929.]

*Mr. D. Trueman Stackhouse,* for the complainant.

*Mr. George B. Evans,* for the defendant.

LEAMING, V. C.

I entertain the view that restraint must be retained pending final hearing. To remove that restraint would be wholly destructive of the *corpus* of the property on which the lien of the mortgage is claimed by complainant.

The sole question for solution is whether plants growing in pots and in the soil of the elevated trays referred to in the affidavits are included in the lien of complainant's mortgage. I presently think it reasonably clear that they are. In reading the entire description contained in the mortgage following the metes and bounds description of the land, it seems impossible to view that part following the declaration of lien on after-acquired property and the added declaration of "it being the intention hereof that said real estate, buildings and other property and appurtenances shall be and are hereby conveyed as an active, going and operating plant for the carrying on of the greenhouse and nursery business," as segregated from that defined intent, and intended to relate only to products of the company then existing. With the specific after-acquired property provision embracing appurtenances and followed by the general intent, so expressed, the language following that expressed intent can easily be understood as also intended to refer to after-acquired products in use as a part of the business operations of the nursery.

But aside from that question of construction of the lan-

guage so used, I am presently impressed that growing plants, whether in pots or in the trays referred to in the affidavits on file, cannot, as against the mortgagee in this mortgage, be seized by a creditor of the mortgagor as personal property. As a greenhouse and nursery, expressly contemplated and authorized by the terms of the mortgage to be operated as such, the contemplated operation necessarily embraces these usual methods of growing plants under cover, and such plants, so grown, should thus be regarded the same as plants or other crops grown in the open to be subsequently harvested for sale. The circumstance that such plants are not to be attached to the soil in the same manner as ordinary crops is necessarily contemplated in the greenhouse operation statement of the parties; they are ordinary greenhouse crops raised in soil for subsequent harvest; products which only can be raised in soil. Until severance a mortgage on the real estate contemplating the propagation of such crops by the mortgagor should, I think, be treated the same, as to its lien, as a mortgage on other growing crops to be raised by the mortgagor. The rule as to such crops, as stated in 1 *Jones Mort.*, § 434, is as follows: "Trees and shrubs planted in a nursery garden, for the temporary purpose of cultivation and growth until they are fit for market, and then to be taken up and sold, pass by a mortgage of the land, so that neither the mortgagor nor his assignee or creditors can remove them as personal property." This rule appears to be supported by the weight of authority and is in harmony with the general rule in this state as to growing crops. See *Ahern* v. *Littl,* 90 *N. J. Eq.* 72; 41 *C. J.* 484, § 403.